IN THE DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| RONALD L. MCNINCH JR., | CIVIL CASE NO. 16-00021 |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION**<br>re Amended Motion to Dismiss |
| UNIVERSITY OF GUAM, | |
| Defendant. | |

Before the court is an Amended Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant University of Guam. *See* ECF No. 49. The motion was referred to the undersigned for a Report and Recommendation.[1] Defendant sought dismissal of the First Amended Complaint on the basis that it fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The court set the motion for hearing on August 22, 2017, but continued the hearing to September 14, 2017. On the continued hearing date, the court heard oral arguments from the parties and took the matter under advisement. Having reviewed all pertinent pleadings filed herein and heard argument from counsel, the court hereby issues this Report and Recommendation.

**BACKGROUND**

1. Procedural History

This action was originally filed on March 11, 2016. The Plaintiff asserted one claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), and two claims under the Guam

---

[1] General Order No. 17-00002 referred all *pro se* matters which are dispositive in nature to the Magistrate Judge. Plaintiff Ronald L. McNinch Jr. is proceeding *pro se*.

Organic Act. *See* ECF No. 1.

In lieu of an answer, the Defendant filed a Motion to Dismiss on June 28, 2016, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 8.

At the motion hearing on April 4, 2017, Chief Judge Ramona V. Manglona orally granted the motion in its entirety. *See* Minute Order, ECF 38 and Transcript at 5, ECF No. 44. The second and third causes of action under the Guam Organic Act were dismissed with prejudice and the first cause of action under Title VII was dismissed without prejudice, with leave to amend so as to allege additional facts and details going to causation. *See id.* at 5-6.

Plaintiff filed a First Amended Complaint ("FAC") on May 11, 2017, asserting claims under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 1983, and Title 17, Section 16112 of the Guam Code Annotated.[2] *See* ECF No. 41.

In lieu of an answer, Defendant filed a Motion to Dismiss on May 24, 2017, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, with a Memorandum of Points and Authorities. *See* ECF No. 46-47. The next day, Defendant filed an Amended Motion to Dismiss for failure to state a claim, along with a Memorandum of Points and Authorities to support it (hereinafter, "Memorandum in Support") and a Declaration of Victoria M.Y. Renacia. *See* ECF No. 49-51.

On June 15, 2017, Plaintiff filed a Memorandum of Points and Authorities requesting a denial of Defendant's Amended Motion to Dismiss (hereinafter, "Opposition"). *See* ECF No. 53.

On June 29, 2017, Defendant filed a Reply Brief. *See* ECF No. 54.

On July 6, 2017, Plaintiff filed a Request for Oral Argument. *See* ECF No. 56. The court granted the Request for Oral Argument on July 31, 2017. *See* ECF No. 58. The court set the motion for hearing on August 22, 2017, but continued the hearing to September 14, 2017. *See* ECF No. 61.

---

[2]Plaintiff states in his FAC that his claims arise under Title VII, § 1983, and the Guam Organic Act, *see* FAC ¶1, ECF No. 41, but states in his Opposition that his third claim is under Guam Law (section 16112), *see* Opp'n ¶III.E.3. ECF No. 53.

On the continued hearing date, the court heard oral arguments from the parties and took the motion under advisement. *See* Minutes, ECF No. 64.

2. Factual Background[3]

Plaintiff is a full-time tenured professor at the University of Guam. FAC ¶14a, ECF No. 41. He was hired by the University as an Assistant Professor of Public Administration in August 1996. Compl. ¶15, ECF No. 1.[4] He was promoted to Associate Professor and granted tenure in 2001. *Id.* "Since 1996, [P]laintiff has held about [forty] major leadership or major committee roles at the [U]niversity." FAC ¶14c[5], ECF No. 41. Based on the Plaintiff's pleadings, the following is a timeline of the relevant allegations in support of Plaintiff's claims:

| | |
|---|---|
| 2008 | Plaintiff complained to the University President about equal employment opportunity ("EEO") concerns regarding faculty and administrators hiring and promoting minority faculty members and suggested policy changes. *Id.* ¶14f. |
| 2010 | Plaintiff conducted a study on faculty promotion rates over a 15-year period from 1995-2010 and found that there was a major promotions gap for minority and female faculty. *Id.* ¶14g. |
| | Plaintiff complained to the University President and other senior officials about the promotions gap. He held on campus discussions and wrote about the promotions gap in a weekly column newspaper. He stated there appeared to be a "chilling effect" among minority faculty because of the way the promotion and tenure committee operated. *Id.* ¶14h. |
| December 2011 | Plaintiff applied for promotion to Full Professor. *Id.* ¶14j. |
| February 2012 | The University Faculty Union President and Vice President wrote negative promotion letters with comments on Plaintiff's EEO improvement efforts. *Id.* |

Plaintiff alleges the Union President has "direct and active access" to the University President and the Board of Regents. *Id.* ¶14l.

Plaintiff complained to the United States Equal Employment Opportunity Commission ("EEOC") that Defendant discriminated against him in retaliation for previously engaging in a

---

[3]The facts set forth herein are limited to those facts that are pertinent to this motion.
[4]Plaintiff does not re-plead these facts in the FAC.
[5]Plaintiff's FAC has two paragraphs numbered 14c. The paragraph cited here is the second one.

protected activity. *Id.* ¶14n. Plaintiff's coworkers had informed him that the University EEO office "did not work well for professors and information provided to the office could be used negatively against a faculty member." *Id.*

Plaintiff complained to the University Senior Vice President about the negative letters and concerns about the University EEO office, and informed her of the EEOC complaint. *Id.* ¶14o. Plaintiff wanted the letters removed or edited to remove the Title VII concerns. *Id.* The Senior Vice President referred Plaintiff to the University legal counsel, who advised Plaintiff to process his concerns with the University EEO office. *Id.*

The promotion and tenure committee voted negatively, 1-6, on Plaintiff's application for promotion to Full Professor, and cited the negative promotion letters as the reasons. *Id.* ¶14q. Plaintiff asked for a second vote per the procedure. *Id.* At the second vote, Plaintiff received a negative 3-4 vote, and the committee removed the reference to the union leaders' letters as the reason. *Id.*

The EEOC Complaint became an EEOC Charge on May 2, 2012. *See* Compl. at 10, ECF No. 1.[6]

Plaintiff complained to the Senior Vice President about the negative letters, "taint[ed] committee process," and the University's refusal to use internal EEO processes to remove the letters. FAC ¶14r, ECF No. 41. Plaintiff requested an outside referee to review a research dispute[7] and an outside promotion committee vote or review, as others in Plaintiff's cohort had received external reviews or alternative processes. *Id.* The Senior Vice President refused Plaintiff's requests and forwarded the committee decision to the President for review. *Id.* ¶14s.

Plaintiff pointed out to the Senior Vice President that she was in Plaintiff's cohort and was promoted directly by the President without a committee process. FAC ¶14r, ECF No. 41. The committee denied Plaintiff's promotion because a narrow type of research was missing, but

---

[6] The court notes that Plaintiff attached the EEOC Charge of Discrimination to the original complaint but did not attach it to the FAC. The court also notes that the copy of the EEOC Charge provided to the court is not signed by the Plaintiff.

[7] "The committee picked a single narrow type of research that is not required and denied the [P]laintiff promotion because this part was missing." FAC ¶14r, ECF No. 41.

*Ronald L. McNInch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 5 of 17

others in his cohort had been promoted without it. *Id*. "[P]laintiff fully met the research standards as stated in the rules if the rules were dutifully followed." *Id*. ¶14vii.

In May 2012, The University rejected free EEOC mediation. *Id.* ¶14t.

Plaintiff met with the University President later and was told the "he had 'pulled the trigger' with the US EEOC so the [U]niversity would not review his EEO concern." *Id.* ¶14v.[8]

Plaintiff received the President's final negative decision in December 2012 with the "same [reasoning] as the original promotion committee." Compl. ¶36, ECF No. 1.[9] Plaintiff appealed the denial directly to the University President. FAC ¶14w, ECF No. 41. The President claimed Plaintiff's EEO concerns were reviewed by the University, University legal counsel, and an EEO Officer. *Id.* Plaintiff alleges the review did not follow the University EEO policy or process. *Id.*

"Plaintiff also contends he was subjected to a hostile work environment by Defendants from 1997 for sexual harassment issues Plaintiff raised." *Id.* ¶3. Plaintiff states the University was charged by the EEOC in May 2012 (retaliation charge), November 2015, March 2016, and May 2016. Opp'n ¶III.A, ECF No. 53. Plaintiff does not state whether any of these charges related to sexual harassment issues or a hostile work environment. Plaintiff has only been granted a Right to Sue letter regarding the EEOC Charge based on Retaliation. *See* Compl. at 14, ECF No. 1.

On August 20, 2015, Plaintiff sent an email to faculty leaders, asking them to consider updating the university sexual harassment policy and stated that he had and would continue to report "the most egregious" acts to the police. FAC ¶19, ECF No. 41. In August to September 2015, the Union President sent campus-wide emails to all faculty claiming that Plaintiff had never reported crime. *Id.* ¶19a. In October 2015, the University President served Plaintiff with a confidential letter stating that through an inter-agency agreement, the Attorney General's office was going to conduct an investigation on issues regarding Plaintiff's alleged violations of the

---

[8] Plaintiff organized subparts from a-z followed by i-xvi. The subpart cited here is the letter v on Page 10.

[9] FAC does not specify the date this occurred.

1  University's Faculty Senate's Code of Professional Conduct and the Rules, Regulations and
2  Procedures Manual.[10]

## LEGAL STANDARD

Defendant asserts that Plaintiff failed to assert a claim upon which relief may be granted, thus warranting dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570) (internal quotations omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id*. at 678–79. First, the court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id*. at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id*. at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678

---

[10] Plaintiff alleges in his FAC that the University President claimed "the attorney general's office was going to investigate him for reporting crime." *See* FAC ¶19c, ECF No. 41. Although Plaintiff's allegations must be taken as true, a claim is not plausible where there is an "obvious alternative explanation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). Here, Defendant provided a copy of the letter at issue, which explicitly states "These issues are separate from your right under the law to report criminal behavior without retaliation." *See* Renacia Decl., Ex. A, ECF No. 51.

(citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Iqbal*, 556 U.S. at 679.

Pro se pleadings, "however inartfully pleaded," must be "held to less stringent standards than formal pleadings drafted by lawyers" and are to be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Still, it must not be conclusory and must state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983) (citations omitted).

## DISCUSSION

1. <u>Statement of Claims I: Title VII Retaliation and Hostile Work Environment</u>

Plaintiff's FAC asserts two causes of action in "Statement of Claims I," Retaliation and Hostile Work Environment. *See* FAC at 4, ECF No. 41. The court will address each cause of action separately.

### A. <u>Title VII Retaliation</u>

Defendant argues that Plaintiff fails to state a claim for retaliation because Plaintiff has not made a causal link between a protected activity and an adverse employment action. *See* Mem. Supp. at 9, ECF No. 50.

"It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any [unlawful employment] practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2018). To state a claim for Retaliation under Title VII, a plaintiff must allege the following: (1) the employee engaged in a protected activity, (2) the employer took some adverse action against the employee, and (3) a causal connection existed between the protected activity and the adverse action. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Plaintiff alleges in his FAC that he engaged in the following protected activities: Plaintiff (1) repeatedly complained to Defendant of the "discriminatory manner in which minority applicants and women were evaluated for hiring and promotion for faculty positions" between

///

2000-2012,[11] *see* FAC ¶3, ECF No. 41; (2) filed an EEOC Charge of Discrimination against Defendant in May 2012, *see id.*; Opp'n at 18, ECF No. 53, and (3) participated and assisted the United States EEOC in the investigation until December 2015, *see* FAC ¶3, ECF No. 41; Opp'n at 18, ECF No. 53.

An adverse action under this provision is one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Adverse actions need not directly relate to one's employment and can even occur outside the workplace. *Id.* at 63. "[P]etty slights, minor annoyances, and simple lack of good manners" are normally not considered adverse actions because they would not deter a reasonable worker from making a complaint. *Id.* at 68.

Plaintiff alleges the following adverse actions: (1) Defendant denied Plaintiff's promotion application to Full Professor in 2012, *see* FAC ¶3, ECF No. 41; (2) the University Union President and Vice President wrote negative promotion letters about Plaintiff, *see* Opp'n at 17, ECF No. 53; and (3) Defendant denied internal EEO reviews regarding the negative letters and objective process reviews of employment decisions,[12] *see* FAC ¶¶14v,[13] 14r-s, ECF No. 41; Opp'n at 11, ECF No. 53.

Plaintiff provides circumstantial evidence that his participation in protected activities caused Defendant to deny his promotion. Circumstantial evidence can be shown through proximity in time between the protected activity and the alleged retaliation, defendant's expressed opposition to plaintiff's protected activity, or evidence that the reasons proffered by the defendant for the adverse action were false and pretextual. *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002).

There is no set time that is too long or too short to satisfy the causation requirement. *Howard v.*

---

[11] Dates are taken from the EEOC Charge of Discrimination. *See* Compl. at 10, ECF No. 1.

[12] FAC does not indicate the date(s) in which this occurred, but "plaintiff repeatedly requested for an internal EEO review at each level of the process. All levels refused." *See* FAC ¶14v, ECF No. 41.

[13] Plaintiff organized subparts of paragraph 14 from a-z followed by i-xvi. The subpart cited here is Roman numeral v on Page 11.

*City of Coos Bay*, 871 F.3d 1032, 1046 (9th Cir. 2017). The Ninth Circuit has held that gaps of three and eleven months can support an inference of retaliation. *Id.* (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) and *Allen*, 283 F.3d at 1078). "A rule that any period over a certain time is per se too long would be unrealistically simplistic." *Id.*

Defendant argues that the two-to-four year gap between Plaintiff's protected activity and its denial of Plaintiff's promotion is too great to allow an inference of causation. *See* Mem. Supp. at 10, ECF No. 50. Plaintiff engaged in protected activities from 2000-2015, and was denied the promotion in 2012. Even if the court disregards Plaintiff's allegations pre-dating 2011 as Defendant argues, *see* Mem. Supp. at 10, ECF No. 50, Plaintiff continued to engage in protected activities proximate in time with Defendant's adverse action.

Plaintiff also alleges that the reasons proffered by Defendant for the denial were pretextual. "A plaintiff may show pretext either by showing that unlawful discrimination more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998) (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 428, 256 (1981)).

Defendant states "[t]he decision not to promote Plaintiff to full professor was amply grounded based on relevant and legitimate academic criteria." *See* Mem. Supp. at 9, ECF No. 50. The committee cited the negative promotion letters written by the Union President and Vice President as its reasons for its negative 1-6 vote. The promotion letters included comments about Plaintiff's protected activity. *See* Opp'n Ex. C, at 2, ECF No. 53-3; Ex. D, at 4-5, ECF No. 53-4. Plaintiff complained about the letters and requested for them to be "removed or edited to remove the Title VII concerns," but Defendant refused. Plaintiff requested a second vote per the procedure and received a 3-4 negative vote, but the reference to the letters was removed.

Additionally, the committee denied Plaintiff's promotion because a "narrow type of research" was missing in Plaintiff's promotion application, but others in his cohort had been promoted without it. This was not a required category in the rules and Plaintiff "fully met the research standards as stated in the rules if the rules were dutifully followed." *See* FAC ¶14vii, ECF No. 41.

The Senior Vice President, who was in Plaintiff's cohort, was promoted directly by the President without the committee process Plaintiff was subjected to. Plaintiff requested an outside referee and outside promotion committee vote or review, as other faculty in Plaintiff's cohort had received external reviews or alternative processes, but the Senior Vice President of the University refused his requests. Plaintiff was subject to unfair standards that were not imposed on others in his cohort. *See id.* ¶14r.

Moreover, Plaintiff seeks to impute the Union President and Vice President's retaliatory animus in writing the negative promotion letters to Defendant. *See* Opp'n at 17, ECF No. 53.

Employers can be liable for subordinate employees' retaliatory acts when a subordinate employee sets an adverse action in motion in response to one's protected activity. *See Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). The subordinate employee's bias is imputed to the employer if the plaintiff can prove that the biased subordinate influenced or was involved in the decision making process. *Id.*

In *Poland*, an employee asked the employer to perform an administrative inquiry on the plaintiff's performance. *Id.* at 1183. The employee then provided the inquiry panel with numerous incidents of malfeasance by the plaintiff and provided a list of witnesses without consulting the plaintiff. *Id.* The court held that the employee's animus had a "pervasive influence" on the administrative inquiry that led to an adverse employment action. *Id.*; *see also* 1-2 Whistleblowing and Retaliation § 2.1, Lexis (database updated 2014) ("Courts generally . . . impute[] such retaliatory acts to the employer . . . where the employer knew or should have known of the retaliatory conduct and failed to take appropriate measures").

Defendant argues that the negative promotion letters were written by "fellow faculty members, not supervisors or administrators of the University. Their letters cannot be deemed adverse action by the University." *See* Mem. Supp. at 11, ECF No. 50. However, like the employee in *Poland*, the Union President and Vice President greatly influenced Defendant's denial of Plaintiff's promotion. *See* FAC ¶14q, ECF No. 41. The letters were involved in the decision-making process and the committee even cited the letters as the reasons for the negative vote. *Id.* Furthermore, Plaintiff complained about the negative letters referencing Plaintiff's

*Ronald L. McNInch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 11 of 17

protected activity and Defendant refused to remove or edit them to remove the Title VII concerns. *Id.* ¶14iv.

Finally, suspending or limiting access to an internal grievance procedure can be an adverse action. *See E.E.O.C. v. Bd. of Governors of State Colls. and Univs.*, 957 F.2d 424, 430 (7th Cir. 1992). In *Board of Governors*, an employee lost his or her contractual right to an internal grievance procedure if he or she filed a charge of discrimination. *Id*. The court held that denying an employee's right to an internal grievance procedure because he or she files a charge of discrimination constitutes an adverse action because it would deter employees from participating in protected activities. *Id.* at 431.

Plaintiff alleges a direct causal link between his protected activities and Defendant's adverse action of denying internal EEO reviews. Plaintiff states he was "told by the [U]niversity [P]resident that he had 'pulled the trigger' with the US EEOC and thus would not process the EEO complaint internally." *See* FAC ¶14xi, ECF No. 41.

Accepting Plaintiff's allegations as true, Plaintiff has stated a plausible claim of retaliation under Title VII and thus the court recommends that the Amended Motion to Dismiss be DENIED as to this claim. The court will now address the Hostile Work Environment claim.

### B. Hostile Work Environment

Defendant argues Plaintiff's hostile work environment claim exceeds the scope of Plaintiff's EEOC Charge and the court's leave to amend. *See* Mem. Supp. at 2, ECF No. 50.

Title VII plaintiffs must exhaust administrative remedies before seeking judicial relief. *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984). A plaintiff may only bring claims that are included in an EEOC Charge or that are "like or reasonably related" to the allegations in the charge. *Green v. L.A. County Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989). To determine whether an allegation is "like or reasonably related" to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Green*, 883 F.2d at 1476. Where claims are not so closely related that a second investigation would be redundant, "the

EEOC must be afforded an opportunity to consider disputes before federal suits are initiated."
*Brown*, 732 F.2d at 730.

Defendant argues that Plaintiff's 2012 Charge of Discrimination and subsequent Right to Sue letter stated a "single narrow issue." *See* Mem. Supp. at 2, ECF No. 50. In material part, Plaintiff's Charge alleged:

> I have repeatedly complained to Respondent between 2000 and 2012 pertaining to the selection of minority applicants based on their race and national origin for promotion.
> …
> I believe that my non-selection for promotion has been strongly influenced by Dr. [redacted] and Dr. [redacted], Union [redacted], who provided negative reference letters to the Promotion and Tenure Committee on January 23, 2012 and February 8, 2012 making direct and indirect references to my previous protected activity.

Compl. at 10, ECF No. 1.

Plaintiff alleges he was "subjected to a hostile work environment by Defendants from 1997 for sexual harassment issues Plaintiff raised." *see* FAC ¶3, ECF No. 41. Plaintiff's sexual harassment issues and hostile work environment allegation are not included in the EEOC charge at issue. The court finds that a retaliation claim for opposing discriminatory actions and a hostile work environment claim for sexual harassment issues are not so closely related that a second investigation would not be redundant. Plaintiff must exhaust administrative remedies so that the EEOC has an opportunity to conduct an investigation before it is brought before a federal court.

Accordingly, the court recommends that the Amended Motion to Dismiss be GRANTED for the Hostile Work Environment claim. Next, the court will address Plaintiff's "Statement of Claims II."

2.        <u>Statement of Claims II: First Amendment Related Retaliation(s): Right to Privacy</u>

Plaintiff asserts two causes of action in his "Statement of Claims II," First Amendment Retaliation and a violation of his Right to Privacy. *See* FAC at 14, ECF No. 41. The court will address each cause of action separately.

First, Defendant argues Plaintiff's First Amendment Retaliation claim exceeds the scope of Plaintiff's EEOC Charge and the court's leave to amend. *See* Mem. Supp. at 2, ECF No. 50. As this claim is separate from the Title VII Retaliation claim and is asserted under 42 U.S.C. § 1983,

*Ronald L. McNinch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 13 of 17

Plaintiff is not required to exhaust administrative remedies before seeking judicial relief. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). Further, although this claim may exceed the court's leave to amend, pro se plaintiffs are held to less stringent standards than lawyers and their pleadings are to be construed liberally, so the court will proceed in determining whether Plaintiff states a plausible claim.

Additionally, Defendant argues Plaintiff has failed to state a claim of retaliation because Defendant is not a "person" subject to suit under § 1983 and Plaintiff has not suffered adverse action. *See* Mem. Supp. at 14, 16, ECF No. 50.

It is true that the Government of Guam and its instrumentalities are immune under § 1983 for monetary damages and other retrospective relief. *See* 42 U.S.C. § 1983 (2018). However, states and its instrumentalities are not immune from prospective injunctive relief. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (citing *Ex Parte Young*, 209 U.S. 123, 149-56 (1908)). Here, Plaintiff requests the court to

> Preliminarily and permanently enjoin defendants from taking any further retaliatory action against the plaintiff for exercising his legal rights; grant a temporary restraining order against the union president and union board members from any further attempts to influence the management of UOG to act against the plaintiff or to harass the plaintiff regarding his protected activities including participating in EEO proceedings or investigations and opposing civil rights violations. The plaintiff prefers a "labor union divorce" to permanently separate the plaintiff from this abusive union;

*See* FAC ¶E, at 19, ECF No. 41. Plaintiff is not seeking monetary damages for this claim, so Defendant is not immune from suit.

To state a claim for Retaliation under § 1983 for a violation of the First Amendment, plaintiff must establish (1) that plaintiff engaged in constitutionally protected activity; (2) plaintiff was subjected to adverse action; and (3) the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights. *Coszalter*, 320 F.3d at 973.

Defendant argues Plaintiff has not suffered adverse action—the second element—but neither party addresses the first element of the claim. The first issue before the court is whether Plaintiff engaged in a constitutionally protected activity.

Plaintiff alleges he exercised his First Amendment rights of free speech and petition by

*Ronald L. McNInch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 14 of 17

reporting crimes of sexual harassment to the police. *See* FAC ¶20, ECF No. 41. "The considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 389 (2011). For an employee's speech to be protected under the First Amendment, the employee must speak or petition as a citizen on a matter of public concern, and the employee's interest must outweigh any state interests. *Id.* at 398.

Plaintiff does not allege that he reported crimes as a citizen or within his role as an employee of the University of Guam. Defendant also does not argue whether Plaintiff spoke as a citizen or an employee. The court cannot determine from the current state of the pleadings whether Plaintiff's activity is protected under the First Amendment. Thus, Plaintiff has failed to allege the necessary capacity by which said statements were made to state a claim that is plausible on its face.

Furthermore, an adverse action under this provision is one that "chill[s] the exercise of protected First Amendment rights." *Coszalter*, 320 F.3d at 973. Even the denial of a "trivial" benefit may be an adverse action if it is aimed to punish protected speech. *Ulrich v. City and County of S.F.*, 308 F.3d 968, 977 (9th Cir. 2002) (citations omitted).

In *Ulrich*, the plaintiff protested the department's decision to lay off a class of employees. *Id.* at 972. The following week, the plaintiff received notice that he was being investigated by the employer for "professional incompetence." *Id.* The court found that this investigation was an adverse action and the proximity in time was sufficient circumstantial evidence from which a jury could infer that the plaintiff's protected speech was substantial motivation for the adverse action. *Id.* at 980.

Plaintiff alleges the investigation by the Office of the Attorney General was an adverse action. *See* FAC ¶19c, ECF No. 41. As the investigation was done through an inter-agency agreement between Defendant and the Office of the Attorney General, the investigation can be considered an adverse action by Defendant. Similar to the "professional incompetence" investigation in *Ulrich*, the University President states the investigation on Plaintiff is for alleged violations of University policies and provisions. The court in *Ulrich* inferred causation through

*Ronald L. McNinch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 15 of 17

proximity in time. Here, Plaintiff received notice of the investigation two months after he sent an email to faculty leaders stating that he exercised his rights of free speech and petition by reporting crime. *See id.* ¶19, 19c.

In reviewing Plaintiff's First Amendment Retaliation claim, the court finds that Plaintiff has sufficiently pleaded factual allegations for the second and third elements of the claim. However, as the court has stated above, Plaintiff has failed to satisfy the first element as he has not alleged in what capacity his statements were made. Thus, the court recommends that this claim be DISMISSED with leave to amend on Plaintiff's part, so as to address the first element of whether Plaintiff engaged in a constitutionally protected activity.

Second, Plaintiff alleges Defendant violated his Right to Privacy by disclosing a "confidential" letter that stated the Office of the Attorney General would be conducting an investigation on issues regarding Plaintiff's alleged violations of the University's Faculty Senate's Code of Professional Conduct and the Rules, Regulations and Procedures Manual. *See* FAC ¶21, ECF No. 41.

The Supreme Court recognizes a constitutionally protected "zone of privacy" that protects two kinds of interests: one's "individual interest in avoiding disclosure of personal matters" and "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977) Personal rights deemed "fundamental" or "implicit in the concept of ordered liberty," including matters relating to marriage, procreation, contraception, family relationships, child rearing and education, fall within this zone of privacy. *See Roe v. Wade*, 410 U.S. 113, 152-53 (1973) (internal citations omitted).

Publications of records of official acts, such as arrests, do not require constitutional protection. *See Paul v. Davis*, 424 U.S. 693, 713 (1976). In *Paul*, the local police published and distributed a flyer containing a list of people who were thought to be shoplifting, including information about the plaintiff's previous arrest and outstanding charge. *Id.* at 696. The information was not seized in the course of an unreasonable search and did not relate to marriage, procreation, contraception, family relationships, and child rearing and education. *Id.* at 713. The court held that the publication of the plaintiff's arrest was not an invasion of privacy and the harm

to his reputation was not a sufficient liberty interest. *Paul*, 424 U.S. at 712; *see also Davis v. Bucher*, 853 F.2d 718, 721 (9th Cir. 1988) (holding that a police officer circulating sensitive photos of an inmates wife to other inmates and making derogatory comments to coworkers was "tasteless, unwise, and unwarranted," but did not rise to the level of constitutional injury). *But see Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) (recognizing a constitutionally protected privacy interest in personal medical information).

Defendant's disclosure of the confidential letter does not appear to fall within the constitutionally protected zone of privacy. The letter did not contain information about marriage, procreation, contraception, family relationships, or child rearing and education. Moreover, it did not contain sensitive information such as medical information. Similar to the official record published in *Paul*, the confidential letter informing Plaintiff about an investigation by the Office of the Attorney General does not rise to the level of constitutional protection.

The court therefore recommends GRANTING the motion with regard to Plaintiff's Right to Privacy claim. Finally, the court will address Plaintiff's "Statement of Claims III."

3. <u>Statement of Claims III: Freedom of Association; Right to a Legitimate Union</u>

Defendant argues Plaintiff has not stated a cause of action upon which relief may be granted. *See* Mem. Supp. at 19, ECF No. 50.

Plaintiff alleges Defendant violated his Freedom of Association right under the Guam Organic Act, 48 U.S.C. 1241b(a), pursuant to § 1983. *See* FAC ¶25a, ECF No. 41; Opp'n ¶IV.E.3, ECF No. 53. Defendant argues Plaintiff has made "no allegation that the University has prevented Plaintiff from forming, joining, or managing an employee organization." *See* Mem. Supp. at 21, ECF No. 50. The court agrees.

Next, Plaintiff alleges Defendant violated his Right to a Legitimate Union under Title 17, Section 16112 of the Guam Code Annotated, because the "payment arrangement" between Defendant and the Union President is a conflict of interest and incompatible with Guam laws. *See* FAC ¶25c, 25e, ECF No. 41; Opp'n ¶III.E.5, ECF No. 53. Defendant argues that Section 16112 does not create a private right of action against Defendant. *See* Opp'n 20:3, ECF No. 50. In relevant part, Section 16112 provides:

*Ronald L. McNInch, Jr. v. University of Guam*, Civil Case No. 16-00021
Report and Recommendation re Motion to Dismiss
page 17 of 17

> Faculty shall have the right to form, join, assist and participate in the management of employee organizations . . . provided that, employees shall not participate in the management of an organization . . . where such activity would result in a conflict of interest or otherwise be incompatible with law.

17 G.C.A. § 16112 (2017). Plaintiff has not alleged that Defendant violated his right to form, join, assist, or participate in the management of employee organizations or that his involvement has resulted in a conflict of interest or otherwise incompatible with the law.

Plaintiff has not stated a cause of action against Defendant University of Guam as he has not alleged an injury to his freedom of association or "right to legitimate union" by Defendant. The court recommends that the Amended Motion to Dismiss be GRANTED for Plaintiff's Statement of Claims III against Defendant University of Guam.

## CONCLUSION

Based on the above analysis, the Court hereby recommends denying in part and granting in part Defendant's Amended Motion to Dismiss. The court recommends:

1. DENYING the motion as to Plaintiff's Title VII Retaliation claim;
2. GRANTING the motion as to Plaintiff's Hostile Work Environment claim;
3. GRANTING the motion as to Plaintiff's Right to Privacy claim;
4. GRANTING the motion as to Plaintiff's Statement of Claims III; and
5. GRANTING the motion as to Plaintiff's First Amendment Retaliation claim.

However, the Court recommends that in granting said motion that Plaintiff be granted leave to amend his complaint so as to address the issue of whether Plaintiff engaged in a constitutionally protected activity as noted above.

**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Jun 22, 2018**

## NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge.  28 U.S.C. § 636(b)(1)(B).**