# IN THE DISTRICT COURT FOR
# THE TERRITORY OF GUAM

RONALD L. MCNINCH, JR.,

    Plaintiff,

vs.

UNIVERSITY OF GUAM, AND DOES 1-10, inclusive,

    Defendants.

Case No.: 16-cv-00021

**DECISION AND ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION, ON REPORT AND RECOMMENDATION, AND DEFENDANT'S MOTION TO DISMISS**

## I.     INTRODUCTION

Before the Court are Defendant University of Guam's amended motion to dismiss the first amended complaint (ECF No. 49), the magistrate judge's Report and Recommendation ("R&R") on the amended motion to dismiss (ECF No. 78), Defendant's objections to the R&R (ECF No. 86), and Plaintiff's response to Defendant's objections (ECF No. 90).

The Court has considered the briefs and supporting materials submitted by the parties and rules on the motion and objections to the R&R below.

1

## II. BACKGROUND

a. **Factual Background**

The factual background as recounted in the R&R is adopted.[1] The Court will briefly relate the facts relevant to the amended motion to dismiss and the objections to the R&R.

Plaintiff Ronald L. McNinch, Jr. is a full-time tenured professor at the University of Guam ("UOG"). (First Amended Complaint ("FAC") ¶14a, ECF No. 41.) McNinch states that he proactively opposed Title VII violations on campus and lobbied for policy changes, and that his activism efforts were well known to university officials and faculty. (*Id.* at ¶¶14a–c.[2]) While he pleads activism going as far back as 1996, the more recent and relevant allegations include relaying "his EEO concerns related to minority faculty at UOG" to the university president in 2008, complaining to senior officials about negative committee actions, holding on-campus discussions, discussing the promotions gap in a weekly newspaper column, and submitting a Freedom of Information Act request for university Equal Employment Opportunity ("EEO") and promotions records in 2010. (*Id.* at ¶¶14f–i.[3])

McNinch applied for a promotion to full professor in December 2011. (*Id.* at ¶14j.) He alleges that the Faculty Union president and vice president wrote negative promotion letters commenting on

---

[1] As noted in the R&R, the facts alleged in the complaint are assumed to be true only for purposes of deciding Defendant's motion to dismiss (ECF No. 78, 6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court [considering a motion to dismiss] should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.")

[2] As noted in the R&R, the FAC has two paragraphs labeled 14c. This citation includes both.

[3] As noted in the R&R, Plaintiff organized paragraph 14 into subparts labeled a–z followed by i–xvi. The 14i cited here is on page 6. All page references to ECF documents in this order are to the electronic page number.

his "EEO improvement efforts." (*Id.*) McNinch then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") for retaliation based on the union letters. (*Id.* at ¶14n.) He also expressed his concerns regarding the letters to UOG legal counsel. (*Id.* at ¶14o.) The promotion committee voted 6–1 against promoting McNinch, citing the letters from the union officials as rationale. (*Id.* at ¶14q.) McNinch requested a second vote, in which the committee removed the reference to the letters and voted again against his promotion, this time 4–3. (*Id.*) Around this time, McNinch's complaint to the EEOC based on the two union letters resulted in a formal EEOC charge. (*Id.*)

McNinch states that he contacted the senior vice president regarding the "tainting of the committee process and the university refusing to use the internal EEO process to remove [the union letters]." (*Id.* at ¶14r.) He also requested review by an outside referee or promotion committee, as "had been done for others in the plaintiff's cohort." (*Id.*) He reminded the senior vice president of the active EEOC charge he had filed, but states that she refused his request for an alternative review process and forwarded the committee's decision to the university president. (*Id.* at ¶14s.) In May 2012, the university rejected free EEOC mediation. (*Id.* at ¶14t.) McNinch emailed the university president regarding his concerns about the school's rejection of mediation and failure to use its internal EEO process regarding his complaints about the promotion process. (*Id.* at ¶14u.) He alleges that he "was told by the president that he had 'pulled the trigger' with the US EEOC so the university would not review his EEO concern." (*Id.* at 10, ¶14v.) McNinch received the final decision denying his promotion from the university president, and his subsequent efforts to appeal this denial with the senior vice president, president, UOG legal counsel and EEO officer were unsuccessful. (*Id.* at ¶14v–w.) On

December 8, 2015, the EEOC issued a right to sue letter in relation to his complaint regarding Title VII employment discrimination and retaliation. (*Id.* at ¶7.)

McNinch also states that he has a "longstanding role in mitigating sexual harassment of employees and students on campus." (*Id.* at ¶14d.) On August 20, 2015, he sent an email to faculty leaders about updating the university sexual harassment policy, in which he stated that "he had and would continue to report 'the most egregious' acts [of sexual harassment] to the police." (*Id.* at ¶19.) On October 13, 2015, the university president sent McNinch a letter regarding that email and related complaints against him for violations of university policies on collegiality, honesty, and integrity. (Declaration of Victorina M.Y. Renacia, ECF No. 51, Ex. A.)

### b. Procedural Background

Plaintiff McNinch, proceeding pro se, filed his original complaint on March 11, 2016. (ECF No. 1.) He asserted three claims: a civil rights (Title VII) retaliation claim; a claim regarding a merit system under the Guam Organic Act, and a due process claim also under the Guam Organic Act. (*Id.*) On April 4, 2017, the Court granted UOG's motion to dismiss the entire complaint for failure to state a claim (ECF No. 8), with leave for McNinch to amend the Title VII claim to include facts establishing causation, and with prejudice as to the other two claims. (Minutes, ECF No. 38; Transcript at 5:22–6:06, ECF No. 44.) McNinch filed his first amended complaint on May 11, 2017. (ECF No. 41), asserting three claims. Under his "Statement of Claims I" for retaliation and hostile environment, McNinch alleges that UOG violated Title VII of the Civil Rights Act of 1964 as amended by (1) retaliating against him for his activities opposing employment discrimination by UOG, and (2) subjecting him to a hostile work environment in response to his raising of sexual harassment issues.

4

(FAC ¶¶2–3, 14, ECF No. 41.) In "Statement of Claims II," he alleges a claim of First Amendment retaliation in response to McNinch's August 20, 2015 email asking UOG to update its sexual harassment policy and stating that he had reported crimes of sexual harassment to the police. (*Id.* at ¶¶19–19a.) He also brings a claim against UOG for violating his right to privacy "by divulging information contained in a confidential disciplinary action-like letter." (*Id.* at ¶21.) Under "Statement of Claims III," McNinch alleges that UOG violated his right to freedom of association under the Guam Organic Act and his right to a legitimate faculty union under Guam law. (*Id.* at ¶25, 25c, 25e.)

Defendant UOG filed its motion to dismiss with a memorandum on May 24, 2017 (ECF No. 46), followed the next day by an amended motion to dismiss with memorandum in support and declaration of Victoria M.Y. Renacia, UOG's legal counsel. (ECF Nos. 49–51.) UOG moved to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 49.) McNinch filed a memorandum requesting a denial of Defendant's amended motion to dismiss on June 15, 2017. (ECF No. 53.) UOG filed a reply brief on June 29, 2017. (ECF No. 54.)

The magistrate judge issued a Report and Recommendation addressing UOG's amended motion to dismiss McNinch's first amended complaint. (ECF No. 78.) First, the R&R recommends denying the motion to dismiss the Title VII retaliation claim for McNinch's activities related to his alleged employment discrimination by UOG, finding that McNinch stated a plausible claim of retaliation against UOG. (*Id.* at 17.) Second, the R&R recommends granting the motion to dismiss McNinch's remaining claims of hostile work environment, right to privacy, "Statement of Claims III" (right to freedom of association under the Guam Organic Act, 48 U.S.C. 1241b(a) and right to a

legitimate union under Title 17, Section 16112 of the Guam Code Annotated), and First Amendment retaliation. (*Id.*) As to the last claim of First Amendment retaliation, the R&R recommends granting McNinch leave to amend the complaint "to address the issue of whether Plaintiff engaged in a constitutionally protected activity." (*Id.*)

After the R&R issued, UOG timely filed its objections. (ECF No. 86.) McNinch made no objections to the R&R,[4] but he did file a response to UOG's objections. (ECF No. 90.)

### III. LEGAL STANDARD

When a party objects to a magistrate judge's report and recommendation, the district court judge "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* She need not review any parts that are not objected to. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[4] "The plaintiff does not object to any items" in the R&R. (ECF No. 90 at 7.)

6

*Twombly*, 550 U.S. 544, 570 (2007)). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-pleaded allegations could "plausibly give rise to an entitlement to relief." *Id.* at 996 (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded allegations "are 'merely consistent with' a defendant's liability," the plausibility threshold has not been satisfied. *Id.* (quoting *Iqbal*, 556 U.S. at 678.) But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even under the heightened *Twombly*/*Iqbal* pleading standard, the "'obligation' remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

### IV. ANALYSIS

The R&R recommends denying the motion to dismiss McNinch's Title VII retaliation claim for his activities related to his allegations of employment discrimination by UOG. (ECF No. 78 at 17.) The R&R further recommends that McNinch's First Amendment retaliation claim be dismissed with leave to amend to allow Plaintiff to address whether he was engaged in constitutionally

7

protected activity. (*Id.* at 15.) As McNinch submitted no objections to the R&R, the Court will only address the four objections submitted by UOG.

**Defendant's Objection 1: Misplaced Reliance on *Poland* Case**

UOG first objects to the R&R's denial of the motion to dismiss McNinch's Title VII retaliation claim on the ground that the magistrate judge misapplied the rule from *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007).[5] (Objection, ECF No. 86 at 2–7.) The R&R relied on the *Poland* decision to support McNinch's argument to impute the Faculty Union president and vice-president's retaliatory animus to UOG. (R&R at 10.) In *Poland*, the Ninth Circuit Court of Appeals addressed when the animus of a biased subordinate can be imputed to the employer in a retaliation case brought under the Age Discrimination in Employment Act. *Poland*, 494 F.3d at 1181. There, the biased subordinate asked the employer to conduct an inquiry into his co-worker and had a "pervasive influence" on that inquiry, which resulted in an adverse employment action. *Id.* at 1183. The court affirmed judgment for the co-worker, finding that the bias of the subordinate and his role in defining the scope of the

---

[5] UOG notes that *Poland* is "based on outdated standards subsequently abrogated by the U.S. Supreme Court." (ECF No. 86, 10 n.8.) In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court held that the standard of proof for Title VII retaliation claims is but-for causation. *Nassar*, 570 U.S. at 360. Following *Nassar*, at least five circuits have held that retaliation claims brought under the cat's paw theory are still viable. *See Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272–73 (2d Cir. 2016); *Zamora v. City Of Houston,* 798 F.3d 326, 331–32 (5th Cir. 2015); *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1070 (6th Cir. 2015); *Bennett v. Riceland Foods, Inc.,* 721 F.3d 546, 551 (8th Cir. 2013); *Ward v. Jewell,* 772 F.3d 1199, 1205 (10th Cir. 2014). "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006), *cert. granted*, 549 U.S. 1105 (2007), *cert. dismissed*, 549 U.S. 1334 (2007).

8

inquiry and leading the inquiry panel to unfavorable evidence "unlawfully tainted" the employer's decision. *Id.* at 1184. In finding a causal link between the subordinate's bias and the employer's decision, the *Poland* court held that

> if a subordinate, in response to a plaintiff's protected activity, *sets in motion* a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.

*Id.* at 1182 (emphasis added).

UOG asserts that, under the rule in *Poland*, "the imputation of subordinate-level bias is limited to situations 'where the investigation that led to the adverse employment decision was initiated by, and would not have happened but for the biased subordinate.'" (ECF No. 86 at 9) (quoting *Poland*, 494 F.3d at 1184) (emphasis omitted). Therefore, under this theory, because McNinch set in motion the investigation when he submitted his request for a promotion, there is no basis for imputing the alleged animus of a biased subordinate to UOG. *Id.* However, the *Poland* court noted that the standard it applied was consistent with previous Ninth Circuit Title VII retaliation cases, including *Bergene v. Salt River Project Agric. Imp. & Power District*. *Poland*, 494 F.3d at 1182–83. *Bergene* involved a retaliation claim in connection with the denial of a promotion. 272 F.3d 1136, 1141 (9th Cir. 2001). There, the court held that "[e]ven if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the hiring decision[,]" despite the fact that the plaintiff herself had set the process in motion by applying for a new position. *Id.* The *Poland* court also held that its decision was consistent with the law in a majority

9

of the circuits, including the Third Circuit as expressed in *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3rd Cir. 2001). *Poland*, 494 F.3d at 1183. In *Abramson*, an untenured college professor brought Title VII hostile work environment, religious discrimination, and retaliation claims against her former employer. *Abramson*, 260 F.3d at 267 (*questioned on other grounds in McKenna v. City of Phila.,* 649 F.3d 171 (3rd Cir. 2011)). There the events were set in motion by an annual review, not by any action of a particular individual. *Id.* at 268.

UOG's reliance on *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011), and *Norman v. Clark County Department of Juvenile Justice Services*, 244 F. Supp. 3d 1085 (D. Nev. 2017), is unpersuasive. In *Cafasso*, the court held that the plaintiff lacked sufficient causal evidence to prove liability under the cat's paw theory for retaliation in violation of the False Claims Act. 637 F.3d at 1061. The court did state that in order for Cafasso to prove her theory of liability, she had to establish that a subordinate, in response to Cafasso's protected activity, "set[] in motion" the decision to eliminate Cafasso's department and job, and that the subordinate "influenced or was involved in the decision or decisionmaking process." *Id*. There, the plaintiff relied solely on (1) the fact that some subordinates who were aware of her protected activities were in a position to influence the ultimate decisionmaker and (2) a "cryptic statement" about unnamed individuals who for unknown reasons biased the decisionmaker against Cafasso. *Id.* In light of the lack of evidence, the *Cafasso* court did not apply the *Poland* test to the facts because to do so would have required "undue speculation." *Id.* On the other hand, the Ninth Circuit has applied *Poland* to one job promotion case decided after *Cafasso*, focusing more on the degree to which the biased subordinate was involved in or influenced the employer's ultimate decision, and not the subordinate's role in

10

initiating the process. *France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015) (remanding an ADEA retaliation claim brought by a plaintiff who applied for a vacant position because a reasonable fact finder could infer that the biased subordinate influenced or was involved in the hiring decision). Therefore, the *Cafasso* case provides little guidance to this Court on the application of the *Poland* test.

Similarly, in *Norman*, the district court found that the plaintiff failed to prove the causal link necessary for a retaliation claim because she had no evidence to show any of the subordinate probation officers influenced or were involved in the decisionmaking process that resulted in her termination. *Norman*, 244 F. Supp. 3d at 1092. The cases that UOG relies upon do not support its narrow reading of *Poland*.

Additionally, UOG noted that the magistrate judge failed to address the case law it presented regarding "promotion and tenure issues." (ECF No. 86 at 10–11.) UOG cited *Rajaravivarma v. Board of Trustees for Connecticut State University System* in support of its argument that courts "should not substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure." (*Id.* at 11) (quoting *Rajaravivarma*, 862 F. Supp. 2d 127, 161 (D. Conn. 2012) (internal citation omitted)). However, that same court recognized "that '[t]enure decisions are not exempt under Title VII,' and that it must 'steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior.'" *Rajaravivarma*, 862 F. Supp. 2d at 148 (quoting *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2nd Cir. 1984), and *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1154 (2nd Cir. 1978)). Moreover, the *Rajaravivarma* district court accepted that a cat's paw claim could be brought against a university based on allegations that the negative recommendations of biased supervisors caused the university to deny tenure. *Id.* at 150.

Furthermore, while it is true that the courts in *Curtis v. University of Houston,* 940 F. Supp. 1070 (S. D. Tex. 1996), and *Spuler v. Pickar*, 958 F.2d 103 (5th Cir. 1992), acknowledged the subjective nature of the academic promotion process and the difficulty of judicial scrutiny of those decisions, it is important to note that both of those cases proceeded beyond the pleadings stage. The *Curtis* opinion was on a motion for summary judgment. *Curtis*, 940 F. Supp. at 1072. *Spuler* involved a judgment notwithstanding the verdict. *Spuler*, 958 F.2d at 104. This Court is only examining McNinch's complaint to determine if it can survive a Rule 12(b)(6) motion to dismiss.

Here, the mere fact that McNinch set in motion the promotion process does not preclude a Title VII retaliation claim imputing the animus of his fellow professors to UOG insofar as they influenced or were involved in the alleged adverse employment action. Nor does the case law addressing university promotions shield UOG from Title VII claims related to promotions or tenure decisions. Accordingly, UOG's first objection is overruled.

**Defendant's Objection 2: Professors' Negative Promotion Letters Not Retaliation by Defendant**

UOG next objects to the R&R's failure to address its argument that McNinch "essentially pleaded himself out of court by basing his case on the so-called 'negative promotion letters.'" (ECF No 86 at 12.) Both letters were provided to the Court by McNinch as exhibits to his opposition to Defendant's amended motion to dismiss. (ECF Nos. 53-3, 53-4.) The Court may consider these letters as within the scope of review on the amended motion to dismiss because McNinch referred to them in his complaint, they are central to his claim of retaliation, and no party has questioned their authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). UOG also objects to the magistrate judge's purported failure to examine the letters independently from the descriptions McNinch provided in the

12

FAC. This Court has read both letters and addresses them in turn below.

The first letter was written by Dr. Donald L. Platt, and was addressed to the Promotion and Tenure ("P&T") Committee. (ECF 53-4.) Platt organized his letter into two sections: one assessing McNinch's role as an instructor, and the other criticizing his collegiality. (*Id.*) He argued that McNinch "falls far short of meeting the collegiality requirement, and this was exemplified in his public and false accusation that the Promotion and Tenure process at UOG discriminated against minorities." (*Id.* at 4.) Platt's letter directly cites to McNinch's allegedly false statements regarding discrimination against minorities as a reason not to approve McNinch's promotion.[6] (*Id.* at 5) ("Ron's public and despicable false accusation against innocent people should not be rewarded with promotion.")

The second letter is from Professor Donald Shuster and is also addressed to the P&T Committee. (ECF No. 53-3.) In his letter, Shuster explained that there are three distinct roles that the committee must evaluate for each applicant for promotion or tenure: teaching, research, and service. (*Id.* at 1.) He stated that McNinch's record of service was unsatisfactory and expounded on his opinion by discussing McNinch's service on the P&T Committee. (*Id.*) Shuster negatively made reference to McNinch's "inaccurate public statements about the P&T Committee" and attached a copy of a letter to the editor in which he stated that McNinch's claim that ethnicity and gender factor into promotion and tenure decisions was "inflammatory and inaccurate." (*Id.* at 2, 4.) While less overtly derogatory than Platt's letter, Shuster's letter and attachments do contain statements that could be construed as

---

[6] Platt's criticism is focused on the purported falsity of Plaintiff's claim of discrimination. However, as UOG acknowledges in its objections, "this Court is not now being asked to decide whether Dr. Platt's or Dr. Shuster's criticisms are true." (ECF No. 86 at 15.)

showing animus against McNinch because of his public activities opposing discriminatory employment practices that Shuster also denies.

UOG argues that these letters present an "obvious alternative explanation" to McNinch's claim of retaliation: they were provided as part of a legitimate committee proceeding and were not "gratuitous retaliation." (ECF No. 86 at 15.) When determining if a complaint is sufficiently plausible to survive a Rule 12(b)(6) motion to dismiss, "courts must also consider an 'obvious alternative explanation' for defendant's behavior." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 682). Here, UOG has offered the explanation that the letters were legitimate criticisms of McNinch offered as a normal part of the P&T Committee proceedings. (ECF No. 86 at 15.) McNinch submits that these letters "attack the plaintiff for voicing Title VII concerns and call for negative action to be taken." (ECF No. 90 at 14.) Faced with "two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). This Court must determine if UOG's explanation is "so convincing" as to render McNinch's explanation implausible. *Id.* It is certainly believable that Shuster and Platt submitted their negative recommendation letters to the P&T Committee as legitimate responses to the call for faculty input regarding McNinch's possible promotion. However, given that the letters specifically reference McNinch's claims of discrimination against minorities and his activities opposing such discrimination as reasons to deny his promotion, it is not *implausible* that the letter writers were biased against McNinch because of those alleged activities that they both vehemently deny ever happened and, as biased subordinates, influenced UOG's decision not to promote McNinch.

14

Moreover, UOG fails to address McNinch's allegations that UOG denied him access to an internal EEO review regarding the negative letters and refused to provide review of a research dispute issue by an outside referee or committee, which it had done for other faculty members. (FAC, ¶14r–s, ECF No. 41.) As noted in the R&R, UOG's denial of "internal EEO reviews regarding the negative letters and objective process reviews of the employment decisions" is a discrete adverse action alleged by McNinch. (ECF No. 78 at 8.) Denying or limiting an employee's access to an internal grievance procedure can itself be an adverse action. *See E.E.O.C v. Bd. of Governors of State Colls. and Univs.*, 957 F.2d 424, 430 (7th Cir. 1992) (termination of an internal grievance proceeding because an employee files a claim of discrimination is an adverse employment action); *Watford v. Jefferson Cnty. Pub. Sch.*, 870 F.3d 448, 454 (6th Cir. 2017) (holding a grievance in abeyance because an employee files an EEOC charge is an adverse employment action). McNinch alleges that UOG denied him the internal EEO review of these complaints precisely because he had filed an EEOC claim. (FAC, ¶14v at 10, ECF No. 41 ("[P]laintiff was told by the president that he had 'pulled the trigger' with the US EEOC so the university would not review his EEO concern.").)

McNinch has set forth sufficient factual allegations which, if accepted as true, create a plausible claim for retaliation based on the negative promotion letters under a cat's paw theory, imputing the animus of biased subordinates who influenced or were involved in the adverse action. Moreover, McNinch has set forth sufficient factual allegations which, if accepted as true, create a plausible claim for retaliation based on UOG's denial of an internal grievance procedure because of his protected activity of filing an EEOC claim. Defendant's second objection is overruled, and the Court adopts the recommendation to deny the motion to dismiss Plaintiff's Title VII retaliation claim.

15

**Defendant's Objection 3: First Amendment Retaliation Claim Exceeds Scope of Leave to Amend**

UOG objects to the recommendation that this Court grant McNinch leave to amend his complaint as to his First Amendment retaliation claim on the ground that it is a new claim that was outside of the scope of the leave to amend granted on April 4, 2017. (ECF No. 86 at 16–17.)

It is within the discretion of this Court to grant McNinch the opportunity to amend his complaint. Fed. Rule Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman*, 371 U.S. at 182 (citation omitted). The goal of this rule is to ensure that cases are decided on the merits, and not on technicalities. *Id.* at 181–82. If there is no "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[,]" courts should freely grant leave to amend. *Id.* at 182. The Ninth Circuit has "noted frequently that the rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citation and internal quotation marks omitted).

In its third objection, UOG does not address why this amendment would be futile, nor does it allege undue delay, bad faith or undue prejudice. UOG does argue that McNinch has had multiple opportunities to amend and has failed to cure the defects in its complaint, referring to "three (3) entirely different complaints" submitted by McNinch. (ECF No. 86 at 19.) The Court notes that the current

16

complaint before it is the *first* amended complaint. McNinch's prior motion to amend the complaint was denied on April 4, 2017. (Hearing Transcript, ECF No. 44 at 6:7–10.) As required by Civil Local Rule 15, McNinch filed his motion to amend with a copy of his proposed amendment. CVLR 15 ("Any party moving to file an amended pleading shall reproduce the entire proposed pleading."). It would be unfair to categorize his proposed amended complaint as the submission of an amended complaint, as this would penalize McNinch for his compliance with the Civil Local Rules of Practice of this Court. The leave to amend proposed in the R&R would be McNinch's second opportunity to amend and, as such, it does not yet veer into the realm of repeated failures to cure.

Generally, the decision to accept new claims filed in an amended pleading depends on whether the plaintiff was granted leave to amend with or without limitation. *Jameson Beach Prop. Ownership Ass'n v. United States*, No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014) (internal citation omitted). UOG points to multiple cases in which district court judges did not permit parties to bring new claims in amended complaints because they exceeded the scope of the permission granted to amend. (ECF No. 86 at 17 n.30). However, notwithstanding that authority, even if a pleading exceeds the scope of the leave to amend, it remains within the discretion of the court to allow the new claim to proceed. *Beavers v. New Penn Fin. LLC*, No. 1:17-cv-00747-JLT, 2018 WL 385421, at *3 (E.D. Cal. Jan. 1, 2018) ("Even if the Court were to agree that Plaintiff exceeded the scope of leave granted, '[e]xceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof.'") (quoting *Khan v. K2 Pure Sols., L.P.*, No. 12-cv-05526-WHO, 2013 WL 6503345, at *11 (N.D. Cal. Dec. 4, 2013)).

Therefore, because leave to amend is to be freely granted when justice so requires and there is no apparent reason to deny McNinch leave to amend, Defendant's third objection is overruled. This Court grants the motion to dismiss Plaintiff's First Amendment retaliation claim without prejudice and further grants Plaintiff leave to amend his complaint to address the issue of whether he was engaged in a constitutionally protected activity in order to state a claim for First Amendment retaliation under 42 U.S.C. §1983.

**Defendant's Objection 4: Assertions in R&R Suggest Finding of Facts**

UOG's final objection is to the failure of the magistrate judge to use quotation marks around all statements taken from the FAC and to "expressly qualify" that those statements were deemed true for the sole purpose of addressing the motion to dismiss.[7] (ECF No. 86 at 20.) In its review of the R&R, this Court found no instance of the magistrate judge purporting to make a finding of fact. The R&R clearly explained the applicable legal standard of review for a Rule 12(b)(6) motion to dismiss. (ECF No. 78 at 6) ("the court should presume the remaining factual allegations are true and determine whether the claim is plausible.") This Court fails to see the suggestion of fact finding in the R&R that UOG finds objectionable. Defendant's fourth objection is therefore overruled.

/ /

/

---

[7] UOG concedes that it appears that the Magistrate Judge deemed the FAC's factual assertions as true only for purposes of addressing the motion to dismiss. (ECF No. 86 at 20.)

## V. CONCLUSION

For the reasons set forth above, Defendant UOG's Objections to the Magistrate's Report and Recommendation (ECF No. 86) are OVERRULED. The Report and Recommendation (ECF No. 78) is ADOPTED IN FULL.

Defendant's Amended Motion to Dismiss (ECF No. 49) is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII retaliation claim for his activities related to his allegations of employment discrimination by UOG may proceed. Plaintiff's First Amendment retaliation claim is dismissed without prejudice and Plaintiff is granted leave to amend that claim. **The Second Amended Complaint shall be filed no later than October 15, 2018.** All remaining claims are dismissed with prejudice.

IT IS SO ORDERED this 30th day of September, 2018.

RAMONA V. MANGLONA, Designated Judge